**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

Viktor Grunbaum,

                **Plaintiff,**         **Civil Action No. 10-10147**

          **vs.**                  **Chief District Judge Gerald E. Rosen**

**District Director, CIS,**       **Magistrate Judge Mona K. Majzoub**
**Detroit Office**

                **Defendant.**

_____/

**REPORT AND RECOMMENDATION**

     Before the Court is Defendant the United States, Department of Homeland Security, Citizenship and Immigration Services, District Director, Detroit Office's motion for summary judgment of Plaintiff Viktor Grunbaum's request for judicial review of Defendant's denial of Plaintiff's application for naturalization.[1]  (Dkt. 35.)  The Court has been referred this motion for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Dkt. 6.)  The Court has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation.[2]

**I.**    **Recommendation**

     Because the Court recommends finding that Plaintiff has not carried his burden of demonstrating good moral character due to his failure to pay his child and spousal support, his lying

---

     [1]In 1973, Plaintiff, 17 years old at the time and a citizen of the Union or Soviet Socialist Republics (USSR), came to the United States as a lawful permanent resident.  (Def.'s Mot. for Summ. J., Ex. 1.)

     [2]The Court dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

about his failure to pay, and his failure to cooperate with Defendant's investigation by not providing the documents Defendant requested, the Court recommends finding that Plaintiff currently lacks the good moral character required for naturalization, granting Defendant's motion for summary judgment, and dismissing this case.

## II.    Report

### A.    Facts

#### 1.    Procedural facts

On January 13, 2010 Plaintiff filed a complaint for mandamus, requesting the Court's assistance in compelling Defendant to render a final decision about his naturalization application. (Compl. at 1.)  Plaintiff alleged that he had been awaiting a ruling since September 26, 2002.  (*Id.*)

On July 13, 2010 Defendant filed a motion to dismiss Plaintiff's complaint as moot, because Defendant had finally adjudicated Plaintiff's naturalization–denying the application.  (Dkt. 20, Def.'s Mot. to Dismiss. Ex. A, June 29, 2010 Decision.)

On July 22, 2010 Plaintiff filed a motion to amend his complaint.  (Dkt. 23, Mot. to Amend.) He requested that the Court review Defendant's administrative decision to deny his naturalization application.  (*Id.*)  On October 29, 2010 the Court granted Plaintiff's motion to amend and recommended denying Defendant's motions for judgment on the pleadings, for summary judgment, and motion to dismiss as moot.  (Dkt. 29, Order Granting Mot. to Amend.)  Neither party objected to the recommendation, which was adopted.  (Dkt. 32.)

Defendant's motion for summary judgment followed.  (Dkt. 35, Def.'s Mot. for Summ. J.)

#### 2.    Facts relating to Plaintiff's naturalization application and his good moral character

##### a.    Plaintiff's naturalization application and process

2

On February 19, 2002 Plaintiff filed an application for naturalization.  (Def.'s Mot. for Summ. J., Ex. 23.)  On June 6, 2003 Defendant held a hearing on that application.  (*Id.*)  At the hearing, Defendant put Plaintiff under oath and questioned him about his application and specifically about his prior arrests.  At the interview, the interviewer took a record of sworn statement of Plaintiff.  (Def.'s Mot. for Summ. J., Ex. 20.)

On September 30, 2003 Defendant denied Plaintiff's application for naturalization.  (Def.'s Mot. for Summ. J., Ex. 21.)  Defendant denied the application because it found that Plaintiff lacked the good moral character required for naturalization.  (*Id.*)  Defendant based its lack of good moral character finding on Plaintiff's failure to list all of his prior arrests–he failed to disclose a 1978 arrest for an assault and battery.  (*Id.*)  Defendant also based its denial on Plaintiff's failure to produce documents reflecting his arrests and failure to produce documents showing that he provided financial support to his dependent children.  (*Id.*)  On October 14, 2003 Plaintiff requested a hearing for review of Defendant's decision.  (Def.'s Mot. for Summ. J., Ex 22.)  In that request, Plaintiff stated that he felt as if he did not get a fair interview.  (*Id.*)  He added that he completely forgot to mention, and that he was not asked about, his 1978 arrest for assault and battery in Oak Park, Michigan.  (*Id.*)  He states that his failure to mention this incident was an "honest omission and oversight."  (*Id.*)  On December 10, 2004 Plaintiff had his hearing.

Almost six years later, on June 29, 2010 Defendant finally denied Plaintiff's appeal of the hearing decision.  (*Id.*, Ex. 23.)  In the final denial, Defendant reviewed why it initially denied Plaintiff's application and then it stated why it was still denying Plaintiff's request–going over Plaintiff's post-initial-denial arrests.  (*Id.*)

      **b.**    **Facts submitted by Defendant–including facts after Defendant's interview of Plaintiff**

3

Defendant has submitted extensive documentation to aid the Court in making its de novo review of Plaintiff's moral character. This documentation consists of those charges and arrests that Plaintiff experienced before he filled out his naturalization application as well as documentation of incidents that have occurred after Plaintiff submitted his naturalization application, was interviewed for it, and appealed the denial. The Court presents a summary of the documentation:

- Plaintiff was arrested in 1978 for an assault and battery charge committed in Oak Park, Michigan. Plaintiff entered a plea for the misdemeanor offense and the plea was taken under advisement. Plaintiff was placed on probation for one year. (Def.'s Mot. for Summ. J., Ex. 2.)

- Plaintiff was arrested on October 22, 1979 for larceny under $50.00 in Livonia, Michigan. Plaintiff was sentenced to jail for ten days, put on probation, and fined $100.00. (Def.'s Mot. for Summ. J., Ex. 3.)

- In 1986 Plaintiff was convicted by a jury of delivery of a controlled substance, cocaine. (Def.'s Mot. for Summ. J., Ex. 4.) The conviction was reversed, and, in 1989, Plaintiff pled guilty to delivery of a controlled substance, cocaine; he was sentenced to 36 months of probation. (Def.'s Mot. for Summ. J., Ex. 6.)

- In 1987 Plaintiff was arrested and charged with one count of felony larceny by conversion over $100.00. (Def.'s Mot. for Summ. J., Ex 7.) The charges were eventually dismissed. (*Id.*, Ex. 10.)

- In 1988 Plaintiff was arrested and charged with two felony violations of the Precious Gem and Metal Dealers Act, Michigan Compiled Law § 445.489, for failing to record a transaction and allowing a purchase without checking identification. (Def.'s Mot. for Summ. J., Ex. 11.) The charges were ultimately dismissed. (*Id.*)

- In 1992 Plaintiff was found guilty of three counts of pawnbroker violations; Plaintiff was fined. (Def.'s Mot. for Summ. J., Ex. 12.)

- In 2001 Plaintiff and his wife were divorced. (Def.'s Mot. for Summ. J., Ex. 15.) The consent judgment ordered Plaintiff to pay $4,000.00 in child support every month. (*Id.*) The consent judgment also provided that Plaintiff would pay his ex-wife $4,000.00 in spousal support every month. (*Id.*)

  - On February 20, 2006 Plaintiff's ex wife filed a motion for Plaintiff's child support and alimony to be made through the Michigan Friend of the Court service. (Def.'s Mot. for Summ. J., Ex. 25.) Plaintiff's ex wife's motion

4

shows that Plaintiff had been failing to make his monthly child support and alimony payments. (*Id.*) Plaintiff's ex wife submitted an affidavit in support of her motion. (*Id.*, Ex. 26.) Plaintiff's ex wife stated that Plaintiff made the appropriate payments until October, 2004. (*Id.*) But after that time, she stated that Plaintiff paid substantially less than the court-ordered amounts. (*Id.*) Plaintiff's ex wife attached an exhibit that shows that, as of February 1, 2006, Plaintiff owed $84,800.00. (*Id.*) Plaintiff's ex wife ultimately filed for, and was granted, a lien on Plaintiff's property in the amount of $78,800.00 for unpaid child and spousal support. (*Id.*, Ex. 29.) In the state case to have Plaintiff pay his support, the state court found that Plaintiff acted egregiously in several ways. (*Id.*, Ex. 31.) The state court found that Plaintiff had failed to comply with discovery deadlines. (*Id.*) The court also found that Plaintiff was not credible during a motion hearing and, as a result, did not allow Plaintiff to produce evidence of his income, due to Plaintiff's "egregious disregard for the subpoena and court orders in the [state court] matter[.]" (*Id.*)

- On March 7, 2005 Plaintiff was arrested and charged with two counts of pawnbroker violations. (Def.'s Mot. for Summ. J., Ex. 24.) The charges were that Plaintiff failed to report to police and book violations. (*Id.*) The charges were reduced to two counts of disorderly person, to which Plaintiff pleaded guilty on June 7, 2005. (*Id.*) Plaintiff was sentenced to one year probation and ordered to pay fines and costs. (*Id.*) Plaintiff was discharged from probation over two and a half years later, in February, 2008. (*Id.*)

- On March 25, 2011 Plaintiff responded to a letter from Defendant's counsel, regarding this case, stating that he would appear at the required deposition, but without the documents counsel requested. (Def.'s Mot. for Summ. J., Ex. 16.) He stated that he would not produce his divorce documents because he did not think that they were relevant. (*Id.*) He also stated that all he has to do is demonstrate whether he had a good moral character for the last five years, and that only his criminal records, and not his divorce documents, were needed. (*Id.*) Defendant's counsel requested the documents again. (*Id.*, Ex. 17.)

- On June 7, 2011 Plaintiff appeared for deposition. (Def.'s Mot. for Summ. J., Ex. 18.) At the deposition, Defendant's counsel asked, among other things, if Plaintiff had complied with all of the child support requirements that were set forth in his divorce decree. (*Id.*) Plaintiff stated that he had. (*Id.*)

**B.    Summary judgment standard**

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a).  A moving party may meet that burden "by 'showing' – that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  Revised Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  The revised Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v.*

6

*Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

###    C.    Analysis

Plaintiff seeks judicial review of Defendant's denial of his naturalization application. Section 1421(c) of Title VIII of the United States Code provides that a district court will conduct a de novo determination of a plaintiff's naturalization application, making its own findings of facts and conclusions of law.[3]

Here, the parties have suggested that the resolution of Plaintiff's complaint hinges on Plaintiff's "good moral character." The Court agrees and therefore only discusses that aspect of Plaintiff's complaint and Defendant's motion.

In order to be eligible for naturalization, an applicant must prove that he "has been and still is a person of good moral character[.]" 8 U.S.C. § 1427(a). Plaintiff must make this proof by a preponderance of the evidence. *See* 8 C.F.R. § 316.2(b).

Defendant, on its initial review, and the Court, when making a de novo review, is to "evaluate claims of good moral character on a case-by-case basis taking into account the elements enumerated in this section and the standards of the average citizen in the community of residence. [Defendant] is not limited to reviewing the applicant's conduct during the five years immediately preceding the filing of the application, but may take into consideration, as a basis for its determination, the applicant's conduct and acts at any time prior to that period, if the conduct of the application during the statutory period does not reflect that there has been reform of character from

_____

[3] 8 U.S.C. § 1421(c) also provides that a court will conduct a hearing at a plaintiff's request; Plaintiff has not done so, here.

7

an earlier period or if the earlier conduct and acts appear relevant to a determination of the application's present moral character."  8 C.F.R. § 316.10(a)(2); *see also United States v. Posada Carriles*, 541 F.3d 344, 360 (5th Cir. 2008) (Stating, "the government was clearly within its rights to inquire into matters relevant to the moral character determination even though they may have occurred outside of the statutory period for which the applicant bears the burden of proof.").

Plaintiff also bears the burden to show that he has good moral character up until he takes his naturalization oath.  *See* 8 C.F.R. § 316.10(a)(1) ("[The relevant time period] includes [the time] between the examination and the administration of the oath of allegiance.").  *See also United States v. King*, 488 F.3d 1135, 1139 (9th Cir. 2007) ("[A] person must be of 'good moral character' for the five years immediately preceding the date of filing her citizenship application, as well as from the date of filing this application until the date she [] is admitted to citizenship[.]").

Regulations guide courts in the "good moral character" finding.  *See* 8 C.F.R. § 316.10(b).  The Court finds that the below regulations are relevant:

(2)   An applicant shall be found to lack good moral character if during the statutory period the applicant:

(vi)   Has given false testimony to obtain any benefit from the Act, if the testimony was made under oath or affirmation and with an intent to obtain an immigration benefit; this prohibition applies regardless of whether the information provided in the false testimony was material, in the sense that if given truthfully it would have rendered ineligible for benefits either the applicant or the person on whose behalf the applicant sought the benefit[.]

(3)   Unless the applicant establishes extenuating circumstances, the applicant shall be found to lack good moral character if, during the statutory period, the applicant;

(i)   Willfully failed or refused to support dependents[.]

8 C.F.R. § 316.10(b).

The Court, in addition, may base its decision on facts outside of the regulations.  *See* 8

8

U.S.C. § 1101(f) ("The fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character.").

The Court rests its recommendation of granting Defendant's motion for summary judgment on four incidents: Plaintiff's after-application arrests and charges, Plaintiff's failure to provide documentation concerning his spousal and child support, when Defendant requested the documentation, Plaintiff's lying about the support issues during deposition, and Plaintiff's willful failure or refusal to pay the spousal and child support, as evidenced by the state court documents.[4]

While Plaintiff does acknowledge his 2005 conviction for disorderly conduct, he argues that the crime is not one of moral turpitude.  (Pl.'s Resp. at 1.)  Regardless of whether the crime is one of moral turpitude, the charges, arrest, and probation reflect poorly on Plaintiff's good moral character. And the Court is allowed to look at all circumstances when considering whether an applicant is of good moral character.  8 U.S.C. § 1101(f).

The Court, though, is more persuaded that Plaintiff lacks good moral character given how he conducted himself in his divorce proceedings and after as well as his unwillingness to cooperate in Defendant's investigation.

The records reflecting Plaintiff's failure to comply with court orders and support his ex wife

---

[4]In its motion for summary judgment, Defendant also argues that Plaintiff gave confusing and conflicting statements about his home address, his Social Security Number, and his income, income tax records, and role in his business.  The Court finds Defendant's arguments persuasive, but also finds that those issues are not so clear as to recommend summary judgment on those issues, alone.  *See* 8 C.F.R. § 1101(f)(6) ("No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was–. . . one who has given false testimony for the purpose of obtaining any benefits under this chapter[.]").  The Court finds that the after-application arrests and Plaintiff's resulting failure to pay child and spousal support unequivocally demonstrate that Plaintiff lacks good moral character.

9

and dependents show a lack of good moral character.  The records show that Plaintiff failed to make his complete monthly support payments. (Def.'s Mot. for Summ. J., Ex. 25.)  The records also show that, as of February 1, 2006, Plaintiff owed $ 84,800.00 to his ex wife.  (*Id.*)  Given that amount owed, the Court granted a lien on Plaintiff's property in Plaintiff's ex wife's favor.  (*Id.*, Ex. 29.)  The records also show that the state court found that Plaintiff acted egregiously in several ways.  (*Id.*, Ex. 31.)  The state court found that Plaintiff had failed to comply with discovery deadlines.  (*Id.*)  The court also found that Plaintiff was not credible during a motion hearing and, as a result, did not allow Plaintiff to produce evidence of his income, due to Plaintiff's "egregious disregard for the subpoena and court orders in the [state court] matter[.]"  (*Id.*)  Plaintiff's actions in the state court and failure to pay his support lead this Court to believe that Plaintiff lacks the requisite good moral character for naturalization.  *See* 8 C.F.R. § 316.10(b)(3)(i) (stating an applicant lacks good moral character if he willfully fails or refuses to support dependents during the statutory period).  Plaintiff has not addressed his shortcomings in his state court case or his failure to support his dependents.   At his deposition, Plaintiff stated that he had complied with his child support obligations.   The state court documents show that Plaintiff lied.  This lie violates 8 C.F.R. § 310(b)(2)(vi).

Plaintiff argues that he has not committed a crime of moral turpitude since 1985.  Given that the Court has discussed how it may go beyond crimes of moral turpitude and may look outside of the five years before an applicant files for naturalization, the Court finds Plaintiff's arguments unpersuasive.

The Court further recommends finding that Plaintiff lacks the requisite good moral character due to his failure to submit the documentation about his state court divorce case when Defendant

10

requested the documents.  *See Keaik v. Dedvukay*, 557 F.Supp.2d 820, 821 (E.D.Mich. 2008) (Lawson, J.) (Finding that a plaintiff who failed to be forthright about his traffic violations did not prove by a preponderance of the evidence that he had good moral character and the fact that he failed to submit the proper documentation relating to the traffic violations within a reasonable amount of time constituted a failure to prosecute his citizenship application.").  In *Keaik*, the court held that "[t]he regulations expressly state that failure to prosecute will be found where an applicant, without good cause being shown, 'fails to provide within a reasonable period of time such documents, information, or testimony deemed by the Service to be necessary to establish his or her eligibility for naturalization.'" *Id*. at 828 (citing 8 C.F.R. § 335.7).

Here, Plaintiff willfully failed to produce documents that Defendant requested. (Def.'s Mot. for Summ. J., Ex. 16.)  He stated that he would not produce his divorce documents because he did not think that they were relevant.  (*Id.*)  He also stated that he all he has to do is demonstrate whether he had a good moral character for the last five year, and that only his criminal records, and not his divorce documents, were need.  (*Id.*)  Defendant's counsel requested the documents again.  (*Id.*, Ex. 17.)  While Plaintiff appeared for the deposition, he did so without the requested documents, and stated that he had complied with his divorce consent judgment.  (*Id.*, Ex. 18.)  The documents submitted by Defendant prove otherwise.

Given that Plaintiff failed to cooperate with Defendant and lied during his deposition, the Court finds that Plaintiff lacks the good moral character required for naturalization based on his actions during his divorce proceedings and his failure to pay his court ordered support to his dependents.

**D.    Conclusion**

11

For the above-stated reasons, the Court recommends granting Defendant's motion for summary judgment.

## III.   Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated:  May 21, 2012                          s/ Mona K. Majzoub_____
                                                            MONA K. MAJZOUB

12

UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Viktor Grunbaum and Counsel of Record on this date.

Dated: May 21, 2012                                    s/ Lisa C. Bartlett

                                                                      Case Manager